UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

Clifton Cole, Chapter 7

Case No. 8-19-77656-las

Debtor.
-------------------------------------------------------------x
R.J. BRUZZANO, JR., ALDO IANUZZI, CARMELA IANUZZI, DANIEL O'CONNELL VINCENT COSTANZO, WILLIAM MCNULTY RICHARD MCGUIRE, DAVID DIAS, LEONARD CATALANO, STEPHEN LAROSA, PATRICIA LAROSA and IRENE NELLIE COSTA,

Adv. Pro. No. 8-20-08256-las

Plaintiffs,

v.

CLIFTON COLE,

Defendant.
-------------------------------------------------------------x

**MEMORANDUM DECISION AND ORDER**
**ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs R.J. Bruzzano, Jr., Aldo Ianuzzi, Carmela Ianuzzi, Daniel O'Connell, Vincent Costanzo, William McNulty, Richard McGuire, David Dias, Leonard Catalano, Stephen LaRosa, Patricia LaRosa and Irene Nellie Costa (collectively, "Plaintiffs") commenced this adversary proceeding seeking a judgment denying defendant Clifton Cole ("Defendant" or "Debtor), the debtor in the above-captioned chapter 7 case, a discharge of his debts under 11 U.S.C. § 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4)(A), (a)(5) and (a)(6)(A).[1] Specifically, Plaintiffs allege that Defendant transferred or concealed property of the estate

[1] Hereinafter, title 11 of the United States Code will be defined as the "Bankruptcy Code"; the Federal Rules of Bankruptcy Procedure defined as the "Bankruptcy Rules"; and the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of New York defined as the "Local Bankruptcy Rules." All statutory references to sections of the Bankruptcy Code will be referred to as "§ (section number)." Citations to the Local Bankruptcy Rules will be cited as "E.D.N.Y. LBR____."

with actual intent to hinder, delay or defraud creditors (§ 727(a)(2)), concealed or failed to keep or preserve records from which his financial condition or business transactions might be ascertained (§ 727(a)(3)), knowingly and fraudulently made a false oath in or in connection with his bankruptcy case (§ 727(a)(4)(A)), failed to satisfactorily explain a loss or deficiency of assets (§ 727(a)(5)), and refused to obey a lawful order of the Court (§ 727(a)(6)(A)).

In the alternative, Plaintiffs seek a determination that the debts owed by Defendant to Plaintiffs are excepted from discharge under § 523(a)(2)(A), (a)(4), and (a)(6). Plaintiffs' central allegation is that Defendant obtained money by means of fraud. *See* 11 U.S.C. § 523(a)(2)(A) (the bankruptcy discharge "does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud"); *see also* 11 U.S.C. § 523(a)(4) (excepting from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny"). In addition to the fraud exception, Plaintiffs argue that the debts owed to them are excepted from discharge under § 523(a)(6), which makes nondischargeable a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

Presently pending before the Court is Plaintiffs' unopposed motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), made applicable to this adversary proceeding by Bankruptcy Rule 7056 (the "Motion") [AP Dkt. No. 73].[2] For the reasons discussed below, the Court grants the Motion pursuant to § 727(a)(4)(A). Accordingly, the Court enters judgment for Plaintiffs on the fourth cause of action in their complaint (the "Complaint") [AP Dkt. No. 1], and Defendant's discharge is denied.

[2] All citations to "[AP Dkt. No.____]" refer to the corresponding docket entry number for this adversary proceeding, Adv. Pro. No. 8-20-08256-las.

## I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the Standing Order of Reference of the United States District Court for the Eastern District of New York, dated August 28, 1986 (Weinstein, C.J.), as amended by Order dated December 5, 2012 (Amon, C.J.) entered in accordance with 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J), in which final orders or judgments may be entered by this Court pursuant to 28 U.S.C. § 157(b)(1).

## II. Applicable Legal Standards

### A. Summary Judgment Motion

Under Fed. R. Civ. P. 56, made applicable to this adversary proceeding by Bankruptcy Rule 7056, summary judgment may not be granted unless the movant shows, based on admissible evidence in the record placed before the court, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.") (quoting former Fed. R. Civ. P. 56(c)). A fact is considered material if it "might affect the outcome of the suit under the governing law," and a genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323. The evidence on each material element of its

claim or defense must be sufficient to entitle the moving party to relief in its favor as a matter of law. *See Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

If the movant meets its initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). A "party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F. 3d 1451, 1456 (2d Cir 1995)). Thus, to meet its burden, the nonmoving party must offer more than a "scintilla of evidence" that a genuine dispute of material fact exists, *Anderson*, 477 U.S. at 252, or that there is some "metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (citations omitted). It must present "significant probative evidence" that a genuine issue of fact exists. *Anderson*, 477 U.S. at 249 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

On a motion for summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F. 3d 732, 740 (2d Cir. 2010) (citation omitted). The Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Ed.*, 444 F.3d 158, 162 (2d. Cir. 2006) (citation omitted). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of N.Y.*, 426 F.3d 549, 553-54 (2d Cir. 2005) (citations omitted). A court should grant the motion if "the record taken as a whole could not

lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

"It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants," *Tracy v. Freshwater,* 623 F.3d 90, 101 (2d Cir. 2010) (citations omitted), "particularly where motions for summary judgment are concerned," *Jackson v. Fed. Express,* 766 F.3d 189, 195 (2d Cir.2014); *accord Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted).

**B. Local Bankruptcy Rule 7056-1**

Pursuant to Local Bankruptcy Rule 7056-1, each summary judgment motion must include "a separate statement of the material facts as to which the moving party contends there is no genuine issue to be tried." E.D.N.Y. LBR 7056-1(c). The nonmoving party shall include in opposition "a separate statement of the material facts as to which it is contended that there exists a genuine issue to be tried." *Id*. All material facts set forth in the moving party's statement "will be deemed to be admitted by the opposing party unless controverted by the statement required to be served by the opposing party." *Id*. "Each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(c)." *Id*.

"A mere denial by [the non-moving party] without citation to admissible evidence in the record is insufficient." *Ethelberth v. Omogun (In re Omogun*), No. 8-16-75566-las, Adv. Pro. No. 8-17-08023-las, 2022 WL 2517160, at *1 (Bankr. E.D.N.Y. July 6, 2022) (citing *Covelli v. Nat'l Fuel Gas Distrib. Corp.*, No. 99-CV-0500E(M), 2001 WL 1823584, at *1 (W.D.N.Y. Dec. 6, 2001), *aff'd*, 49 F. App'x 356 (2d. Cir. 2002) (summary order)). "Courts in

this district are free to disregard each statement of material fact by a movant or opponent where there is no citation, or the cited materials do not support the statement." *Id.* at *7 (citing *Hotlz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)).

The Court has "broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Id.* at *8 (quoting *Hotlz*, 258 F.3d at 73). Where material facts in a party's statement go uncontested, either in part or in full, they are not automatically accepted—they will, nonetheless, be disregarded if not supported by appropriate citations to the record and the evidence in the record does not support such party's statement. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003); *Omogun*, 2022 WL 2517160, at *8 (undertaking an "independent review of the record" to ensure that "each statement of a proposed undisputed fact is supported by a citation to the record"). Even "where the non-moving party 'chooses the perilous path of failing to submit a response to a summary judgment motion,'" the court must still determine whether the movant has met its burden to show that no genuine issue of material fact exits for trial. *Vt. Teddy Bear*, 373 F.3d at 244 (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)).

As explained below, Defendant did not file a response to Plaintiffs' summary judgment motion.[3] The Court has undertaken an independent review of the record to determine whether the material facts in the Plaintiff's Statement of Material Facts submitted pursuant to Local Bankruptcy Rule 7056-1 ("SOMF") [AP Dkt. No. 73] are supported by citations to the record and whether the record supports the Plaintiffs' assertions. By failing to properly

[3] Defendant was served with copies of the Court's Scheduling Order for the Motion dated April 27, 2022 with Notice to Pro Se Litigants, Plaintiff's SOMF, Bankruptcy Rule 7056, Local Bankruptcy Rule 7056-1, Fed. R. Civ. P. 56 by email at pristinecole1@aol.com. Defendant was served with copies of the Motion, affidavits and memorandum of law in support of the Motion, Notice to Pro Se Litigants, Plaintiff's SOMF, Bankruptcy Rule 7056, Local Bankruptcy Rule 7056-1, Fed. R. Civ. P. 56 by Priority Mail 1-Day. *See* Affs. of Service [AP Dkt. Nos. 79-80].

controvert Plaintiffs' SOMF, the properly cited and supported material facts set forth in Plaintiffs' SOMF are "deemed to be admitted" for purposes of the summary judgment motion to the extent they are supported by the record. *See* E.D.N.Y. LBR 7056-1(c); *see also Good v. Goulding (In re Goulding)*, No. 8-17-72174-las, Adv. Pro. No. 8-17-08188-las, 2021 WL 4483116, at *1 (Bankr. E.D.N.Y. Sept. 30, 2021) (citing *Jackson*, 766 F.3d at 194) (finding the plaintiff's statement of undisputed facts as supported by evidence in the record to be deemed admitted because the defendant did not oppose the summary judgment motion and did not file a counterstatement as required by Local Bankruptcy Rule 7056-1).

## III. Factual Background

On November 8, 2019, Defendant filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Clerk of this Court, which was converted to a chapter 7 case on January 31, 2020. *See* Ch. 11 Pet. [Bankr. Dkt. Nos. 1, 31][4]; Pls.' SOMF ¶ 4.[5] Defendant, represented by counsel, signed the chapter 11 petition (the "Petition") and the accompanying statements and schedules ("Schedules") and Statement of Financial Affairs ("SOFA") (collectively, the "Bankruptcy Filings"). *See* [Bankr. Dkt. No. 1]; Ex. 5, § 341 Hr'g Tr. at 4:6-8.[6] In his Bankruptcy Filings, Defendant made sworn statements regarding his businesses, business interests, bank accounts, real property, and other assets, all under penalty of perjury. *See* [Bankr. Dkt. No. 1].

Additionally, Defendant testified under oath at a meeting of creditors held pursuant to Section 341 of the Bankruptcy Code on March 2, 2020 ("§ 341 Meeting" or "§ 341 Hearing")

---

[4] All citations to "[Bankr. Dkt. No.____]" refer to the corresponding docket entry number for the Debtor's main bankruptcy case, Case No. 8-19-77656-las.

[5] All references to "Pls.' SOMF ¶ (number)" refer to the corresponding paragraph of the Plaintiffs' Statement of Material Facts. [AP Dkt. No. 73].

[6] Unless otherwise stated, all citations to "Ex. ___" refer to exhibits filed in support of the Plaintiffs' SOMF. [AP Dkt. Nos. 75-78].

and at an examination held pursuant to Bankruptcy Rule 2004 on November 24, 2020 ("Rule 2004 Examination" or "Rule 2004 Deposition").[7] *See* Ex. 5, § 341 Hr'g Tr.; Pls.' SOMF ¶ 129; Ex. 4, Rule 2004 Dep. At the § 341 Meeting, Defendant affirmed that it was his signature on the Petition, that he did not want to make any changes or corrections to it, and that Defendant had listed all his assets and liabilities. *See* Ex.5, § 341 Hr'g Tr. at 4:7-11; 6:15-17.

In and around 2008, Defendant entered into a real estate investment partnership—named New York Equity Partners, Inc. ("NYEP")—with Patrick Vertucci, with the goal of purchasing and renovating homes in Long Island, New York and then reselling them. *See* Pls.' SOMF ¶ 13; Ex. 6, NYEP Flyer; Ex. 8, NYS Dept. of State entity pages. Along with NYEP, another corporate entity named Green Beetle Funding Corp., later changed to Green Beetle Management Corp. ("Green Beetle"), was formed in 2008 to receive and disburse funds

---

[7] Defendant refused to sign the Rule 2004 Deposition transcript. *See* Pasquantonio Decl. ¶ 18. The transcript was sent to the Defendant's attorney, Btzalel Hirschhorn, Esq., for Defendant's review, but Defendant's attorney advised opposing counsel that Defendant would not be signing the transcript. *See id.* The original transcript was returned (though the copy and exhibits were retained). *See id.* Defendant did not file any motion, objection, or other challenge to the transcript content. *See id.* The transcript was signed by an officer, certifying that the witness was duly sworn and that the transcript was a true record of the testimony given by the witness. *See* Ex. 4, Rule 2004 Dep. at 294. Pursuant to relevant precedent in this Circuit, and "[u]nder Federal Rule of Civil Procedure 30(e), if the deposition is not signed by the witness within 30 days of its submission to the witness, the officer before whom the deposition was taken may sign, and the deposition may then be used as fully as though signed unless on a motion to suppress under Rule 32(d)(4) the court holds that the reasons given for the refusal to sign require rejection of the deposition in whole or in part." *Vasquez v. Maloney*, 15-cv-8848 (NSR), 2020 WL 1309989, at *7 (S.D.N.Y. Mar. 19, 2020) (quotation marks omitted) (quoting *Baker v. Ace Advertisers' Serv., Inc.*, 134 F.R.D. 65, 73 (S.D.N.Y. 1991), *report and recommendation adopted*, 153 F.R.D. 38 (S.D.N.Y. 1992)). Furthermore, "Rule 30(e) of the Federal Rules of Civil Procedure does not mandate signature by the deponent, but rather requires, only upon 'request by the deponent . . . before the deposition is completed,' that the deponent be afforded a 30-day period in which to review the transcript, and, if the deponent wishes to make any changes, that the deponent 'sign a statement listing the changes and the reasons for making them.'" *Vlad-Berindan v. NYC Metro. Transp. Auth.*, 14-cv-10304, 2017 WL 9538168, at *26 (S.D.N.Y. Aug. 25, 2017) (quoting Fed. R. Civ. P. 30(e)). "Thus, under the Federal Rules, '[t]he fact that [a] [p]laintiff did not sign the deposition transcript[s] does not . . . make [the testimony] inadmissible, as a deponent is required to sign the deposition transcript only if review of the transcript is requested before the deposition is completed and changes are made by the deponent.'" *Id.* (quoting *Merring v. Town of Tuxedo, N.Y.*, No. 07-cv-10381, 2009 WL 849752, at *13 n.7 (S.D.N.Y. Mar. 31, 2009); *see also Thomas v. S.E.A.L. Sec., Inc.*, 301 F. App'x 32, 33 (2d Cir. 2008) (summary order) (citing Fed. R. Civ. P. 30(e)) (finding the magistrate judge did not err in relying on an unsigned deposition because "a deposition need only be signed where a party so requests"). Accordingly, the Court will treat the Rule 2004 Deposition transcript as though Defendant signed it.

and to obtain mortgages. *See* Pls.' SOMF ¶¶ 23-25; Ex. 8, NYS Dept. of State entity pages. Defendant testified during the Rule 2004 Examination that Green Beetle would receive transfers from multiple corporate accounts in order to make the entity "look strong" in order to obtain low-interest mortgages. Pls.' SOMF ¶ 23; Ex. 4, Rule 2004 Dep. at 89. Real estate holding companies were also formed to purchase and/or mortgage real properties, and on September 28, 2015, Defendant and Mr. Vertucci dissolved their partnership and real estate holding companies, leaving Defendant as the sole member of the following companies: NYEP; Green Beetle; 3 Constant Ct. Inc.; 3 Jeff Court Inc.; 32 Washington Ave., Inc.; 127 East Carlton Dr., Inc.; Sara Holding Corp.; and PJ Harbor Holding Corp. *See* Pls.' SOMF ¶¶ 28-29; Ex. 9, Agreements. These companies were disclosed in the Defendant's Bankruptcy Filings. *See* Schedule A/B q. 19; SOFA q. 27 [Bankr. Dkt. No. 1]. Defendant listed additional real estate companies in his Bankruptcy Filings, in which he was the 100% interest member or a partner: CRC Equities, LLC; 2140 Rt. 112, Inc.; and Mt. Sinai Cabinet Company, LLC.[8] *See* Pls.' SOMF ¶ 30; Schedule A/B q. 19; SOFA q. 27 [Bankr. Dkt. No. 1]. Defendant has also worked as a real estate broker, and his real estate brokerage company is named Pristine Properties Cole, Inc., in which Defendant has a 100% ownership interest. *See* Ex. 5, § 341 Hr'g Tr. at 7:22-24, 8:3-5, Schedule A/B q. 19 [Bankr. Dkt. No. 1].

To fund his real estate investment ventures, Defendant would generally invite investors to participate in two different ways: one involving a cash investment with a promissory note and monthly interest payments and a second involving a joint venture agreement with a 50/50 split in profits. *See* Ex. 6, NYEP Flyer; Pls.' SOMF ¶ 17; *see also* Ex. 38-A, 41-43, 101, 120, 148, 158-59, 182, JV Agreements and/or Promissory Notes. The Plaintiffs are owed debts from Defendant arising from such real estate investments. *See* Pls.'

[8] In the SOFA, Defendant described Mt. Sinai Cabinet Company LLC as a "construction company that did small [construction] jobs and new kitchen [residential] installations." [Bankr. Dkt. No. 1].

SOMF ¶ 20; Ex. 6, NYEP Flyer; Ex. 4, Rule 2004 Dep. at 255-56. Defendant testified that he is obligated as an individual to repay these debts. *See* Pls.' SOMF ¶¶ 9-12; Ex. 4, Rule 2004 Dep. at 255-56. Additionally, Defendant has not disputed the debts owed to Plaintiffs. *See* Pls.' SOMF ¶ 11; Ex. 3, Schedules E/F.

1. Content of Bankruptcy Filings and Testimony at § 341 Meeting

In his Bankruptcy Filings, Defendant listed several businesses that he owns or has an interest in, and signed the documents, declaring under penalty of perjury that the information provided was true and correct. *See* [Bankr. Dkt. No. 1]. However, as discussed below, Defendant did not disclose his interest in or connection with two business entities, Nest Capital, LLC ("Nest Capital") and RC Rush Equities Corp. ("RC Rush").

*a. Nest Capital, LLC*

In his Bankruptcy Filings, Defendant did not disclose his interest in Nest Capital, nor has he filed an amendment to include Nest Capital. *See* Pls.' SOMF ¶ 39; Ex. 10, Schedules. However, Defendant was a member of Nest Capital, having signed the Operating Agreement for Nest Capital on October 22, 2015. *See* Pls.' SOMF ¶¶ 37-38; Ex. 92, Nest Cap. Op. Agreement. The Operating Agreement for Nest Capital, under Article I, Section 1.2, names Johnathan Kornreich and Clifton Cole as the only two members, and Schedule A, specifies that each has a 50% interest. *See* Ex. 92, Nest Cap. Op. Agreement. Defendant's signature appears on the signature page of the document. *See id*. On September 13, 2018, Defendant and Mr. Kornreich each signed, as a "Shareholder, officer, Director" of Nest Capital, an authorization of sale of real property located at 72 West Shore Rd. Mount Sinai, NY 11766 ("72 West Shore Rd.") by Nest Capital to a certain buyer for $769,000. *See* Pls.' SOMF ¶ 37; Ex. 91, Authorization Resolution.

*b. RC Rush Equities Corp.*

Additionally, Defendant did not disclose his connection as an officer of RC Rush in his Bankruptcy Filings, particularly in response to question 27 of the SOFA, which asks if the debtor has certain connections to any business within the 4 years prior to filing for bankruptcy, including as an "officer, director, or managing executive of a corporation."[9] *See* Pls.' SOMF ¶ 113; SOFA q. 27 [Bankr. Dkt. No. 1]. Defendant has not filed any amendment to correct this omission. On July 2017, which was within 4 years prior to his bankruptcy filing, Defendant signed a joint venture agreement between RC Rush and K&G Capital Group, LLC ("K&G Capital"), for the purchase, rehabilitation and sale of real property located at 60 Rush Street, Port Jefferson Station, NY 11776 ("60 Rush Street"). *See* Pls.' SOMF ¶ 67; Ex. 15, JV Agreement. The joint venture agreement provided that "Clifton Cole as officer of RC Rush Equities Corp . . . has agreed to take on the following roles and responsibilities and agrees to perform the following services." Ex. 15, JV Agreement. Defendant also signed a personal guarantee to K&G Capital for the $325,000 loan made by K&G Capital to RC Rush in connection with the joint venture agreement. *See* Pls.' SOMF ¶¶ 63-64; Ex. 16, Pers. Guarantee. In addition, on July 2017, there was a joint venture agreement made between RC Rush and K&G Capital for the purchase, rehabilitation and sale of real property located at 20 Whitman Avenue, Port Jefferson Station, NY 11776 ("20 Whitman Avenue"), which stated that Defendant was an officer of RC Rush.[10] *See* Pls.' SOMF ¶ 71; Ex. 20, JV Agreement. Both Defendant and his father, Richard Cole, signed a personal

---

[9] Defendant did disclose in question 18 of the SOFA that within 2 years of filing for bankruptcy, he made a transfer to RC Rush of real property located at 98 W. Shore Road, Mt. Sinai, NY 11766.

[10] The joint venture agreement between RC Rush and K&G Capital concerning 20 Whitman Avenue, which stated that Defendant was an officer of RC Rush, was signed by Defendant's father, Richard Cole, whereas the personal guarantee of the loan made in connection with this joint venture agreement was signed by both Defendant and his father. *See* Pls.' SOMF ¶ 72; Ex. 20, JV Agreement; Ex. 21, Pers. Guarantee.

guarantee of the $267,000 loan made in connection with this joint venture agreement. *See* Ex. 21, Pers. Guarantee. Richard Cole and Maria Zaffarese, an associate of Defendant, both testified at their depositions that RC Rush was effectively Defendant's business.[11] *See* Pls.' SOMF ¶¶ 46-59; Ex. 12-13, Dep. of Richard Cole at 20, 95, 189-192, 230; Ex. 11, Dep. of Maria Zaffarese at 30:24-25, 31:2-7, 34:10-14. Richard Cole testified that RC Rush was intended to be used by Defendant to avoid his wife's involvement with Defendant's business activities and that Defendant controlled the finances and ran the business. *See* Pls.' SOMF ¶¶ 49-50; Ex. 12-13, Dep. of Richard Cole at 20, 22-23, 95, 189-192, 230. Ms. Zaffarese testified that Defendant did most of the work in RC Rush, Richard Cole's involvement with RC Rush was limited (other than opening the business), and that RC Rush was Defendant's company. *See* Pls.' SOMF ¶¶ 47-48; Ex. 11, Dep. of Maria Zaffarese at 30:24-25, 31:2-7, 34:10-14.

2. <u>Transfer of Properties by Nest Capital and RC Rush</u>

Two parcels of real property were sold by Nest Capital or RC Rush within the one year prior to Defendant's bankruptcy filing, and two other parcels of real property were sold post-petition.

On December 11, 2018, Nest Capital sold real property located at 72 West Shore Rd. for $769,000. *See* Pls.' SOMF ¶ 252; Ex. 90, Indenture; Ex. 91, Authorization Resolution. The corporate resolution, authorizing this sale, was signed by Defendant and Mr. Kornreich as shareholders, officers, and directors of Nest Capital. *See* Pls.' SOMF ¶ 37; Ex. 91, Authorization Resolution. This transfer was in violation of an Order to Show Cause ("OSC")

[11] Both Richard Cole and Maria Zaffarese have refused to sign the deposition transcripts. *See* Pasquantonio Decl. ¶ 18. The transcripts were sent to the witnesses, but the witnesses failed to sign them. *See id.* The witnesses did not file any motion, objection, or other challenge to the transcripts' content. *See id.* The transcripts were signed by an officer, certifying that the witnesses were duly sworn and that the transcripts were a true record of the testimony given by the witnesses. *See* Ex. 11, Dep. of Maria Zaffarese at 73; Ex. 12-13, Dep. of Richard Cole at 145, 282. So, for the reasons stated in footnote 7, *supra*, the Court will treat the deposition transcripts as if the witnesses signed them.

entered by the New York Supreme Court, County of Suffolk ("State Court"), in a case involving one of the Plaintiffs, R.J. Bruzzano, Jr., and the Defendant, whereby the State Court stayed and enjoined the Defendant from transferring any real property or interest in real property "individually or in any other capacity." Pls.' SOMF ¶ 40; Ex. 85, OSC. The State Court's stay of any transfer of real property or interest in real property by the Defendant was effective from November 18, 2018, the date of the OSC, to March 6, 2019, when Defendant's application to vacate judgment was decided by the State Court. *See* Pls.' SOMF ¶¶ 40, 382-84, 391; Ex. 85, OSC; Ex. 86, Order Denying OSC. Subsequently, on or about September 23, 2019, less than two months before Defendant's bankruptcy filing, RC Rush sold the real property located at 60 Rush Street for $395,000. *See* Pls.' SOMF ¶ 68; Ex. 18, Suffolk County Land Records and Deed, Indenture.

On May 2020, more than six months after Defendant's bankruptcy filing, RC Rush sold the real property located at 326 East Garden City Street, Islip Terrace, New York ("326 East Garden City Street") for $449,000. *See* Pls.' SOMF ¶ 75; Ex. 23, Suffolk County Land Records and Deed, Indenture. Approximately six months later, on November 13, 2020, a deed was recorded, showing that RC Rush had sold the real property located at 20 Whitman Avenue for $363,000. *See* Pls.' SOMF ¶ 73; Ex. 22, Suffolk County Land Records and Deed.

3. <u>False Statements Made During Rule 2004 Examination and § 341 Meeting</u>

Defendant made false statements during the Rule 2004 Examination, when asked concerning his affiliation with RC Rush.

> Q: Do you have any affiliation with RC Rush Equities?
> A: No.
> Q: Do you have any use or have you ever used RC Rush Equities to buy real property?
> A: I'm not an officer of RC Rush, no . . . .

Ex. 4, Rule 2004 Dep. at 23:2-9. However, before this examination, as described above, Defendant had signed a joint venture agreement with K&G Capital—which stated that Defendant was an officer of RC Rush—concerning the purchase, rehabilitation, and sale of real estate property located at 60 Rush Street. *See* Ex. 15, JV Agreement. Defendant also personally guaranteed the loans made in connection with the two joint venture agreements between RC Rush and K&G Capital concerning the 60 Rush Street and 20 Whitmore Avenue properties. *See* Ex. 16, 21 Pers. Guarantees.

In addition, Defendant made false statements during the § 341 Meeting on March 2, 2020, conducted by the chapter 7 trustee, Kenneth P. Silverman, Esq. *See* Pls.' SOMF ¶¶ 132-46. Defendant testified falsely under oath concerning his involvement with ENL Holding Corp. ("ENL"). During the meeting, counsel for plaintiffs Mr. and Mrs. LaRosa and Ms. Costa asked the Defendant if he was familiar with ENL. *See id.* at ¶ 132; Ex. 5, § 314 Hr'g Tr. at 50:14-16. Defendant responded, *inter alia*, by denying any affiliation with this entity: "I had no E&L[*sic*] . . . . I was never any type of officer at any company by the name of that . . . . I don't have any affiliation with this entity at all. I think this is a mistake or something. Unless Patrick Vitucci[*sic*] did. He opened all the corporations, but I wasn't part of that." Ex. 5, § 314 Hr'g Tr. at 50:20, 50:23-25, 51:7-10. However, on August 2009, the Defendant was one of the signatories of a mortgage agreement between ENL and the LaRosas. *See* Ex. 129, Mortgage Agreement. On June 17, 2009, the Defendant, Mr. Vertucci, and Mr. and Mrs. LaRosa signed the document for Chase Bank to open up a corporate bank account for ENL, and the Defendant signed as the "President" of ENL. *See* Pls.' SOMF ¶ 133; Ex. 128, Chase Acct. Signature Page.

Defendant also testified falsely concerning his consent and knowledge of the rental and occupancy of certain real property located at 20 Frost Valley Road, Mount Sinai, NY ("20

Frost Valley Road")—which was a single-family home listed in Defendant's Schedule A/B and property of the bankruptcy estate—to a certain Ty Edwards Rodriguez and his family for $5,000 per month. *See* Pls.' SOMF ¶¶ 139-46; Schedule A/B [Bankr. Dkt. No. 1]. Defendant testified at the § 341 Meeting that he did not give consent to Mr. Rodriguez to move into this property and that the first time he had knowledge of his occupancy was on the Wednesday or Thursday night of February 26 or 27, 2020. *See* Pls.' SOMF ¶¶ 139-46; Ex. 5, § 314 Hr'g Tr. at 24:12-16, 25:3-9, 25:15-19. The following are excerpts from the § 341 Hearing Transcript:

> MR. SILVERMAN: Here's my question: Was he [Mr. Rodriguez] in the property prior to March 1st with your consent?
> MR. COLE: No. He changed the locks on one of the earlier - - that's why the police department was able to remove him with your help . . . .
>
> MR SILVERMAN: Thank you. When did you become aware that Mr. Rodriguez entered the premises?
> MR. COLE: On Thursday night [February 27, 2020].
> MR SILVERMAN: That was the first knowledge that you had, is that right?
> MR. COLE: Yes. I had no communication with Mr. Rodriguez . . . .
>
> MR. SILVERMAN: So it's your testimony your first knowledge of his occupancy of Frost Valley occurred on Thursday night or - -
> MR. COLE: Thursday night or maybe Wednesday night . . . .

Ex. 5, § 314 Hr'g Tr. at 24:12-16, 25:3-9, 25:15-19. However, Defendant, Rachel Cole, and Ty Rodriguez all signed the lease (with option to purchase) agreement dated February 11, 2020, pertaining to the 20 Frost Valley Road property. *See* Pls.' SOMF ¶ 144; Rodriguez Aff. ¶ 16, Ex. 8, Lease Agreement.[12] Moreover, there are text messages on February 26, 2020 between Defendant and Mr. Rodriguez that show that Mr. Cole was aware of Mr. Rodriguez's rental and occupancy of the property before March 1, 2020:

---

[12] Exhibits cited in conjunction with the affidavit of Mr. Rodriguez refer to the exhibits annexed to such affidavit. [AP Dkt. No. 74].

> MR. COLE: "Ty can we have access to frost valley for about 20 minutes on Friday at 10am. The bankruptcy ct has B.P.O's being done on all 7 of my properties on Friday."
> MR. RODRIGUEZ: "Of course. The bank is doing the BPO or it is your guy?"
> MR. COLE: "it's the bankruptcy courts guy – they are coming out Friday to do all 7 properties . . ."
> MR. RODRIGUEZ: "Gotcha. What's the time frame on sale side you think?"
> MR. COLE: "I was looking to drag it out.. 6-8 months or so I figure the later the better unless u think otherwise"
> MR. RODRIGUEZ: "Whatever works for you man. You able to pocket the 5k a month for as long as you can . . . ."
> MR. COLE: "I need to get through the summer after that I should be good to go"

Rodriguez Aff. ¶ 19; Ex. 11, Text Messages.[13]

---

[13] "The principles governing admissibility of evidence apply equally on a motion for summary judgment as in a trial." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F.Supp.2d 377, 391 (S.D.N.Y. 2005) (citing *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir.1997)). "In both, proper admission requires a determination on relevance and authenticity." *Id.* (citation omitted). Under Federal Rule of Evidence (Fed. R. Evid.) 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Here, these text messages are relevant because, if admitted, they would make the fact of Defendant's consent and knowledge of the rental and occupancy of the 20 Frost Valley Road property more probable than without the evidence, and this fact is of consequence in the Court's determination of whether Defendant's discharge should be denied under § 727(a)(4)(A). In addition, the Court finds the probative value of this evidence is not substantially outweighed by a danger of unfair prejudice or any of the other factors listed in Fed. R. Evid. 403 because the evidence is directly related to the question of Defendant's consent and knowledge and does not have an adverse effect on Defendant beyond the purpose for which it is admitted. *See Lawson v. Rubin*, 17-cv-6404, 2019 WL 13144081, at *2 (E.D.N.Y. Sept. 5, 2019) (quoting *Costantino v. David M. Herzog, M.D., P.C.*, 203 F.3d 164, 174-75 (2d Cir. 2000)) (finding highly probative evidence not unfairly prejudicial because the prejudice was due to the evidence's probative value—in other words, the "unfairness contemplated" did not involve "some adverse effect beyond tending to prove a fact or issue" in question). Regarding authentication, the "threshold determination is relatively low": the "court must merely be able to conclude that the jury *could* reasonably find that the evidence is authentic, not that the jury necessarily *would* so find." *Bazak*, 378 F.Supp.2d at 391 (citation omitted); *United States v. Davis*, 918 F.3d 397, 402 (4th Cir. 2019) (citation omitted). Fed. R. Evid. 901 "provides that the party offering a piece of evidence can establish that the evidence 'is what the proponent claims it is' simply by presenting the testimony of a witness with knowledge that the 'item is what it is claimed to be.'" *United States v. Arnold*, 696 F. App'x 903, 907 (10th Cir. 2017) (unpublished) (citing Fed. R. Evid. 901(a), (b)(1)). Further, "it is well established that, if properly authenticated (for example, by a witness with knowledge, such as a participant), screenshots of text messages and copies of electronic communications are admissible." *United States v. Avenatti*, 559 F.Supp.3d 274, 281 (S.D.N.Y. 2021) (citations omitted). Courts have found that text messages can be authenticated by testimony, including by affidavits, of participants with personal knowledge of the text messages. *See Sanders v. Mohtheshum*, No. 10–cv–02897, 2011 WL 6329866, at *6 n.2 (D. Colo. Dec. 19, 2011) ("The authenticity of the text message is corroborated by [p]laintiff's [a]ffidavit."); *Miro v. City of Bridgeport*, No. 3:20-cv-346, 2023 WL 4992877, at *14 (D. Conn. Aug. 3, 2023) ("Testimony by a witness with knowledge of an electronic communication may be sufficient to authenticate those communications even when they are presented in an altered format."); *In re E.D.T. ex rel. Adamah v. Tayson*, No. 09-CV-5477, 2010 WL 2265308, at *7 n.4 (E.D.N.Y. May 28, 2010) (finding that participant's testimony was sufficient to establish the authenticity of text

## IV. Discussion

### A. Denial of Discharge under 11 U.S.C. § 727(a).

Section 727(a) sets forth twelve bases to withhold a discharge in a chapter 7 case. "Denial of discharge is warranted whenever any of § 727(a)'s subsections is proved." *Ng v. Adler (In re Adler)*, 494 B.R. 43, 61 (Bankr. E.D.N.Y. 2013), *aff'd*, 518 B.R. 228 (E.D.N.Y. 2014) (citations omitted). "If a debtor's discharge is denied in its entirety, all reasons to except a particular obligation from discharge under § 523(a), are rendered moot." *Id.* at 56 (citations omitted).

Denial of a debtor's discharge under § 727(a) is an "extreme penalty" that "must be construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt." *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996) (internal quotation marks and citation omitted). "Courts must exercise even greater caution when considering denial of discharge sought by motion for summary judgment." *Capital One Equip. Fin. Corp. v. Singh (In re Singh)*, 585 B.R. 330, 335 (Bankr. E.D.N.Y. 2018) (citation omitted). "Still, a discharge under section 727 is a privilege, not a right, and may only be granted to the honest debtor." *Piazza v. Keswani (In re Keswani)*, No. 20-10315-JLG, Adv. Pro. No. 20-01345-JLG, 2022 WL 90605, at *6 (Bankr. S.D.N.Y. Jan. 7,

messages). Here, Mr. Rodriguez filed an affidavit, declaring under oath that the text messages (which were printed copies of screenshots) attached to his affidavit as Exhibit 11 were text messages made between he and the Defendant on February 26, 2020. Rodriguez Aff. ¶ 18-19; Ex. 11, Text Messages. Because Mr. Rodriguez was a participant in this communication with personal knowledge of the text messages, the Court finds his affidavit sufficient to authenticate the text messages in Exhibit 11 of his affidavit. Finally, the Court finds that the statements made by Defendant in the excerpted text messages are not hearsay because, under Fed. R. Evid. 801(d)(2)(A), a statement that is "offered against an opposing party" and "was made by the party in an individual or representative capacity" is not hearsay. Fed. R. Evid. 801(d)(2)(A); *Lawson*, 2019 WL 13144081, at *2 (finding that statements made by defendant in text messages were not hearsay); *United States v. Lewisbey*, 843 F.3d 653, 658 (7th Cir. 2016) (finding the text messages sent by defendant were his own statements and thus excluded from the definition of hearsay by Rule 801(d)(2)(A)).

2022) (citations omitted). "This privilege comes with 'the requirement that debtors act in good faith and provide full and honest disclosure.'" *Web Holdings, LLC v. Cedillo (In re Cedillo)*, 573 B.R. 451, 465 (Bankr. E.D.N.Y. 2017) (quoting *Beer Sheva Realty Corp. v. Pongvitayapanu (In re Pongvitayapanu)*, 487 B.R. 130, 138 (Bankr. E.D.N.Y. 2013)). That is, "[f]ull and honest disclosure is required as it is crucial to the effective functioning of the bankruptcy system. Because the bankruptcy court, trustees, and creditors rely on the information disclosed by a debtor, the importance of full disclosure cannot be overemphasized." *Id.* (quotation marks and citation omitted).

The plaintiff bears the burden to prove by preponderance of the evidence that a defendant's discharge should be denied. *See Grogan v. Garner*, 498 U.S. 279, 288 (1991); *Keswani*, 2022 WL 90605, at *6 (citations omitted); *see also Valley National Bank v. Botticelli (In re Botticelli)*, No. 8-13-70167-las, Adv. Pro. No. 8-13-08148-las, 2022 WL 17683407, at *6 (Bankr. E.D.N.Y. Dec. 14, 2022) ("To prevail on its claims [objecting to discharge], plaintiff bears the burden of presenting evidence in support of the allegations in the complaint that defendants' discharge should be denied and proving those allegations by a preponderance of the evidence.").

**B. Elements of a Claim under § 727(a)(4)(A).**

Section 727(a)(4)(A) states:

(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account.

11 U.S.C. § 727(a)(4)(A). The purpose of § 727(a)(4)(A) is "to [e]nsure that adequate information is available to those interested in the administration of the bankruptcy estate without the need of examination or investigation to determine whether the information

provided is true." *Dubrowsky v. Estate of Perlbinder (In re Dubrowsky)*, 244 B.R. 560, 572 (E.D.N.Y. 2000) (citation omitted).

To prevail under § 727(a)(4)(A), a plaintiff must establish five elements by a preponderance of the evidence: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Geron v. Grover (In re Grover)*, 675 B.R. 270, 287 (Bankr. S.D.N.Y. 2025) (citing *Republic Credit Corp. I v. Boyer (In re Boyer)*, 328 F. App'x 711, 715 (2d Cir. 2009) (summary order)).

Regarding the first element, "[a] bankruptcy petition, schedules and related statements are declarations made under penalty of perjury and constitute a statement under oath for purposes of § 727(a)(4)(A)." *Omogun*, 2022 WL 2517160, at *9 (internal quotation marks omitted) (quoting *U.S. Trustee v. Manno-DeGraw (In re Manno-DeGraw)*, No. 8-15-73332-reg, Adv. Pro. No. 8-16-08006-reg, 2016 WL 3708062, at *2 (Bankr. E.D.N.Y. July 6, 2016)). "False oaths can encompass affirmative statements and omissions made not just in the debtor's petition, schedules, and statement of financial affairs but also in statements made during examinations." *Id.* (citation omitted); *see also Kaschner v. Venticinque (In re Venticinque)*, 643 B.R. 708, 736 (Bankr. E.D.N.Y. 2022) (citation omitted) ("Courts agree that a debtor's statements at the Section 341 meeting, which are made under oath, are sufficient to meet [the first] element of a Section 727(a)(4)(A) claim."). "A debtor's statements made at [Bankruptcy Rule] 2004 exams and at formal depositions are given under oath as well." *McDermott v. McDonald (In re McDonald)*, 614 B.R. 801, 811 (Bankr. N.D. Ohio 2020) (citing *U.S. Trustee v. Zhang* (*In re Zhang*), 463 B.R. 66, 86 (Bankr. S.D. Ohio 2012)) (finding "any false statement made by the debtor in the debtor's schedules, at a creditors' meeting held

pursuant to § 341 or during a deposition relating to the debtor's assets and financial circumstances could potentially lead to denial of a debtor's discharge under § 727(a)(4)(A) if all the required elements [are] establish[ed]").

"Regarding the second element, a statement is false if '(1) it omits even one asset or source of income; (2) necessary[ ] material information is repeatedly left undisclosed during a case's pendency; or (3) an affirmative misstatement[ ] is made and is not corrected during an examination or at any point during his case's proceeding.'" *Dialectic Distrib. LLC v. Cameo (In re Cameo)*, 677 B.R. 163, 171 (Bankr. E.D.N.Y. 2025) (quoting *Singh*, 585 B.R. at 336); *see also Adler*, 494 B.R. at 75 (finding debtor made false statements when he failed to disclose his spouse's checking account, his income from prior years, his ownership stake in various corporations, and status as a defendant in state court litigation). "A debtor's failure to identify a business owned and/or controlled by the debtor in the schedules or statement of financial affairs gives rise to a false oath." *Omogun*, 2022 WL 2517160, at *9 (citing *Keswani*, 2022 WL 90605, at *11) (finding defendant made a false oath when considering the numerous omissions and misstatements made in his schedules, statement of financial affairs, and § 341 testimony concerning undisclosed business interests and real estate properties). "The plain language of this statute provides that one single false oath or account is sufficient to deny a debtor's discharge." *TD Bank, N.A. v. Nazzaro (In re Nazzaro)*, No. 810-74869-reg, Adv. Pro. No. 810-8500-reg, 2013 WL 145627, at *7 (Bankr. E.D.N.Y. Jan. 14, 2013) (citations omitted).

Regarding the third element, "[i]n determining a debtor's knowledge of the falsehood of a statement '[c]ourts may consider the debtor's education, business experience, and reliance on counsel . . . but the debtor is not exonerated by pleading that he or she relied on patently improper advice of counsel.'" *Manno-DeGraw*, 2016 WL 3708062, at *2 (quoting *Bub v. Rockstone Cap., LLC*, 516 B.R. 685, 695 (E.D.N.Y. 2014)). "Indeed, courts 'do not read § 727(a)(4)'s knowledge requirement . . . as necessitating an awareness of a legal obligation to

disclose particular information. [Debtor's] actual knowledge of the omitted information itself suffices to fulfill this element.'" *Botticelli*, 2022 WL 17683407, at *9 (quoting *In re Chlad*, 922 F.3d 856, 862 (7th Cir. 2019)); *see also Terrasi-Ruggieri v. Ruggieri (In re Ruggieri)*, No. 23-11332, Adv. Pro. No. 24-90009, 2025 WL 2775308, at *3 (Bankr. N.D.N.Y. Sept. 29, 2025) (finding that defendant had knowledge of a false statement when failing to disclose a residential lease in her schedules because she knew of the omitted residential lease, having entered into the lease agreement); *Carnett v. Davidson (In re Davidson)*, No. 23-11130, Adv. Pro. No. 24-90011, 2025 WL 2730796, at *4 (Bankr. N.D.N.Y. Sept. 24, 2025) (finding that debtor knowingly made a false statement when swearing that the income from his business was zero, while at the same time, "prolifically writing checks and executing transactions from the business account"). "The knowledge requirement is satisfied by showing that 'the bankrupt knows what is true and, so knowing, wilfully and intentionally swears to what is false.'" *Moreo v. Rossi (In re Moreo)*, 437 B.R. 40, 62 (E.D.N.Y. 2010) (quoting *In re Kaufhold*, 256 F.2d 181, 185 (3d Cir. 1958)); *see also Singh*, 585 B.R. at 338 (finding that debtor, who was represented by counsel, had knowledge of false statements where debtor was aware that mistakes and omissions were made in the filing of the petition and schedules).

Regarding the fourth element, "[f]raudulent intent can be established by a showing of actual fraud through evidence of the traditional badges of fraud, or by the debtor's reckless disregard for the truth of his statements." *Cameo*, 677 B.R. at 171-72 (citing *Singh*, 585 B.R. at 338-39). "When determining whether a debtor exhibited a reckless indifference to the truth, a court may consider:"

> (a) the serious nature of the information sought and the necessary attention to detail and accuracy in answering;
> (b) a debtor's lack of financial sophistication as evidenced by his or her professional background; and
> (c) whether a debtor repeatedly blamed recurrent errors on carelessness or failed to take advantage of an opportunity to clarify or correct inconsistencies.

*Omogun*, 2022 WL 2517160, at *10 (quoting *Adler*, 494 B.R. at 77) (quotation marks omitted). "[T]he aggregate of misstatements and omissions of fact can demonstrate a pattern of reckless disregard for the truth and intent of concealing information from the Court and its creditors." *Moreo*, 437 B.R. at 64 (citing *Micro Connections, Inc. v. Shah (In re Shah)*, 388 B.R. 23, 38-39 (Bankr. E.D.N.Y. 2008)).

In addition, "[f]raudulent intent 'may be established by circumstantial evidence or by inferences drawn from a course of conduct.'" *Omogun*, 2022 WL 2517160, at *10 (citation omitted). "The Second Circuit has recognized that 'fraudulent intent may be inferred from a series of incorrect statements contained in the schedules.'" *Id.* (citations omitted); *see also Keswani*, 2022 WL 90605, at *11 (finding debtor's false statements and repeated failure to disclose asset information in her schedules and at the § 341 meeting were sufficient to establish fraudulent intent). Moreover, "[a] failure to amend schedules can give rise to an inference of fraud." *Cameo*, 677 B.R. at 172 (citing *In re Singh*, 585 B.R. at 339-40).

Regarding the fifth element, "materiality is a low threshold." *Davidson*, 2025 WL 2730796, at *6 (citing *Darwin (Huck) Spaulding Living Tr. v. Carl (In re Carl)*, 517 B.R. 53, 70 (Bankr. N.D.N.Y. 2014)). "Materiality, in the context of § 727(a)(4), 'merely requires a showing that the relevant information was something that creditors and the trustee reasonably would have regarded as significant in identifying assets of the estate that could be liquidated and used to satisfy claims.'" *Omogun*, 2022 WL 2517160, at *10 (quoting *Mazer-Marino v. Levi (In re Levi)*, 581 B.R. 733, 754 (Bankr. S.D.N.Y. 2017)). "A false oath is material 'if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Id.* (*quoting Agai v. Antoniou (In re Antoniou)*, 515 B.R. 9, 22 (Bankr. E.D.N.Y. 2014)). "[E]ven worthless assets and unprofitable business transactions must be disclosed."

*Id.* (quoting *Nof v. Gannon (In re Gannon)*, 173 B.R. 313, 320 (Bankr. S.D.N.Y. 1994)); *see also Abraham v. Stuart*, No. 15-CV-04864 (JFB), 2016 WL 4045432, at *8 (E.D.N.Y. July 28, 2016) (noting that debtors have "an absolute duty to report whatever interests they hold in property, even if they believe their assets" are worthless, unavailable, or exempt from creditors). "It is not for the debtor to decide what information is immaterial or unimportant or which asset is of no benefit to creditors." *Omogun*, 2022 WL 2517160, at *10 (citations omitted). "Allowing debtors the 'discretion' to choose the information that is worth disclosing 'would create an end-run around the strictly created system' of bankruptcy administration." *Id.* (citing *Pongvitayapanu*, 487 B.R. at 140). "[M]ateriality does not require showing that the creditors were prejudiced by the false statement." *Id.* (citing *In re Robinson*, 506 F.2d 1184, 1188 (2d Cir. 1974)).

"Once the movant satisfies its initial burden of proving that a false statement was made, the burden of production shifts to the debtor to proffer a 'credible explanation.'" *Cameo*, 677 B.R. at 172 (quoting *Pergament v. Smorto (In re Smorto)*, No. 07-CV-2727 (JFB), 2008 WL 699502, at *4 (E.D.N.Y. Mar. 12, 2008)). "If the defendant does not produce an adequate explanation, 'a court may infer fraudulent intent.'" *Id.* (quoting *Manno-DeGraw*, 2016 WL 3708062, at *2). "However, the overall burden of proof remains with the moving party." *Moreo*, 437 B.R. at 59 (citation omitted).

### C. Plaintiffs Have Established a Claim under § 727(a)(4)(A) by a Preponderance of the Evidence.

1. <u>First element of a claim under § 727(a)(4)(A): Statement Under Oath.</u>

Here, the Petition, Schedules, and SOFA filed by Defendant as well as statements and omissions made by Defendant during the Rule 2004 Examination and § 341 Meeting are all statements under oath for the purposes of § 727(a)(4)(A). *See Omogun*, 2022 WL 2517160, at *9; *Venticinque*, 643 B.R. at 736, *McDonald*, 614 B.R. at 811. Defendant signed the Petition,

Schedules and SOFA under penalty of perjury, declaring the information disclosed therein was true and correct, and Defendant was duly sworn at the Rule 2004 Examination and the § 341 Meeting. During Defendant's testimony at the § 341 Meeting, he affirmed under oath that he did not wish to make any corrections or updates to his petition and that he had listed all his assets and liabilities. *See* Ex.5, § 341 Hr'g Tr. at 4:7-11; 6:15-17. Thus, the first element of a claim under § 727(a)(4)(A) has been satisfied.

2. <u>Second element of a claim under § 727(a)(4)(A): False Statement.</u>

Defendant's Bankruptcy Filings omitted Nest Capital entirely even though Nest Capital's operating agreement reveals that Defendant is one of two members of this limited liability company. *See* Ex. 92, Nest Cap. Op. Agreement. On September 13, 2018, Defendant and Mr. Kornreich each signed as a "Shareholder, officer, Director" of Nest Capital the corporate resolution, authorizing the sale of the 72 West Shore Rd. property by Nest Capital for $769,000. *See* Pls.' SOMF ¶ 37; Ex. 91, Authorization Resolution. Under question 19 of Schedule A/B, which inquires whether a debtor has any non-publicly traded stock and interests in incorporated or unincorporated businesses, including a limited liability company, Defendant failed to disclose Nest Capital. In addition, Defendant failed to disclose Nest Capital in response to question 27 of the SOFA, which asks if the debtor has any connections to any businesses within the 4 years before filing for bankruptcy, including as a member of a limited liability company or officer or director of a corporation. On December 11, 2018, which was within 4 years of his bankruptcy filing, Defendant held an interest in Nest Capital when it transferred the 72 West Shore Rd. property; consequently, Defendant's omission of his interest in Nest Capital constitutes a false statement for the purposes of § 727(a)(4)(A). *See Cameo*, 677 B.R. at 171; *Omogun*, 2022 WL 2517160, at *9 ("A debtor's failure to identify a business owned and/or controlled by the debtor in the schedules or statement of financial affairs gives rise to a false oath.").

Defendant made a false statement by failing to disclose his connection as an officer of RC Rush in his Bankruptcy Filings. In particular, question 27 of the SOFA asks if the debtor has a connection to any business within the 4 years before filing for bankruptcy, including as an officer, director, or managing executive of a corporation. On July 2017, which was within the 4 years prior to Defendant's bankruptcy filing, RC Rush and K&G Capital entered into two joint venture agreements, which expressly stated that Defendant was an officer of RC Rush. *See* Ex. 15, 20, JV Agreements. Furthermore, Defendant's father, Richard Cole, and Maria Zaffarese, Defendant's associate, testified at their depositions that Defendant effectively controlled RC Rush—in other words, he was an officer or managing executive. *See* Ex. 12-13, Dep. of Richard Cole at 20, 95, 189-192, 230; Ex. 11, Dep. of Maria Zaffarese at 30:24-25, 31:2-7, 34:10-14. Defendant's statements in response to questions during the Rule 2004 Examination were also false. Defendant clearly answered "No" to the question "Do you have any affiliation with RC Rush Equities?", and he affirmatively stated: "I'm not an officer of RC Rush . . . ." Such omissions in Defendant's Bankruptcy Filings and misstatements made during examinations are false statements for the purposes of § 727(a)(4)(A). *See Cameo*, 677 B.R. at 171; *Omogun*, 2022 WL 2517160, at *9 (finding defendant made a false oath when considering the numerous omissions and misstatements made in his schedules, statement of financial affairs, and § 341 testimony concerning undisclosed business interests and real estate properties).

Lastly, Defendant made false statements during the § 341 Meeting regarding his affiliation with ENL and his consent and knowledge of the rental and occupancy of 20 Frost Valley Road by Mr. Rodriguez. Defendant affirmatively denied any affiliation with ENL, including as an officer; however, on August 2009, he and Mr. Vertucci signed on behalf of ENL a mortgage agreement between ENL and the plaintiffs Mr. and Mrs. LaRosa. *See* § 314 Hr'g Tr. at 50:14-16, 50:20, 50:23-25, 51:7-10; Ex. 129, Mortgage Agreement. In addition,

Defendant, Mr. Vertucci, and the LaRosas signed the document for Chase Bank to open up a corporate bank account for ENL, where Defendant signed as the "President" of ENL. *See* Pls.' SOMF ¶ 133; Ex. 128, Chase Acct. Signature Page. The record thus reveals that Defendant had an affiliation with ENL and that he was an officer of ENL.

Defendant's statements concerning his consent and knowledge of the rental and occupancy by Mr. Rodriguez of the 20 Frost Valley Road property were also false. The chapter 7 trustee asked Defendant when Defendant first had knowledge that Mr. Rodriguez was occupying the property. Defendant replied that he did not consent to Mr. Rodriguez's occupying the property before March 1, 2020 and that he first had knowledge of Mr. Rodriguez's occupancy on February 26 or 27, 2020. *See* § 314 Hr'g Tr. at 24:12-16, 25:3-9, 25:15-19. However, Defendant, Rachel Cole, and Ty Rodriguez all signed the lease (with option to purchase) agreement dated February 11, 2020, pertaining to the 20 Frost Valley Road property.[14] *See* Pls.' SOMF ¶ 144; Rodriguez Aff. ¶ 16, Ex. 8, Lease Agreement. Moreover, the text messages on February 26, 2020 between Defendant and Mr. Rodriguez show that Mr. Cole consented to and knew of Mr. Rodriguez's rental and occupancy of the property before March 1, 2020. Rodriguez Aff. ¶ 19; Ex. 11, Text Messages. In fact, it was Defendant who asked Mr. Rodriguez if Defendant could have access to the property for "about 20 minutes on Friday at 10am," and the Defendant who stated that he was "looking to drag [the sale] out . . . 6-8 months"—to which Mr. Rodriguez replied that Defendant would able to "pocket the $5k a month for as long as you can." *See id.* Thus, Defendants' affirmative

[14] During the § 341 Meeting, the chapter 7 trustee mentioned this lease agreement dated February 11, 2020 to Defendant, and the Defendant replied that his wife "wrote up a lease agreement and an option to me" and that "he [Mr. Rodriguez] had changed everything." Ex. 5, § 314 Hr'g Tr. at 23:7-13. However, the Court finds that this statement (alleging that Ms. Cole drafted the lease agreement and Mr. Rodriguez changed the terms) is not relevant to the question of whether Defendant had consented to and had knowledge of the rental and occupancy of the property by Mr. Rodriguez. The fact that Defendant signed the lease agreement on February 11, 2020 shows that Defendant had consented to and had knowledge of the rental and occupancy of the property by Mr. Rodriguez before March 1, 2020.

misstatements made to the chapter 7 trustee constitute a false statement for the purposes of § 727(a)(4)(A). *See Cameo*, 677 B.R. at 171 (observing that affirmative misstatements made and not corrected during an examination constitutes a false statement under § 727(a)(4)(A)). Based on the foregoing, the second element of a claim under § 727(a)(4)(A) has been satisfied.

3. Third element of a claim under § 727(a)(4)(A): Knowledge of Falsity

As an initial matter, the Court notes that Defendant is a businessman with experience singlehandedly managing a portfolio of investment properties and related businesses. Given his background, it is implausible to conclude that Defendant did not understand the meaning of the questions asked of him in the Schedules and SOFA regarding his interest or role in any businesses or corporations, especially when he was represented by counsel at that time. And, the testimonial and documentary evidence support the conclusion that Defendant had actual knowledge of his omissions and false statements. *See Botticelli*, 2022 WL 17683407, at *9 (quoting *In re Chlad*, 922 F.3d at 862) (finding "actual knowledge of the omitted information itself suffices to fulfill this element").

Defendant had actual knowledge of his membership interest in Nest Capital because he executed the operating agreement of Nest Capital, which provided for his membership interest. *See Ruggieri*, 2025 WL 2775308, at *3 (finding that defendant had knowledge of a false statement when failing to disclose a residential lease in her schedules because she knew of the omitted residential lease, having entered into the lease agreement). In addition, on September 13, 2018, Defendant signed as a shareholder, officer, and director of Nest Capital when authorizing the sale by Nest Capital of the 72 West Shore Rd. property for $769,000, with the sale taking place on December 11, 2018. *See* Pls.' SOMF ¶¶ 37, 252; Ex. 90, Indenture; Ex. 91, Authorization Resolution. The sale was a sizeable real estate transaction, occurring within 12 months of Defendant's bankruptcy filing. The Court finds that Defendant

knew of his interest in Nest Capital and thus knowingly and intentionally omitted this interest from his Bankruptcy Filings.

The record evidence also shows that Defendant had actual knowledge of his connection to RC Rush. On July 2017, Defendant signed the joint venture agreement (which expressly stated that Defendant was an officer of RC Rush), concerning the purchase, rehabilitation, and sale of 60 Rush Street. *See* Ex. 15, JV Agreement. Defendant personally guaranteed the loan made in connection with this joint venture agreement. *See* Ex. 16, Pers. Guarantee. Furthermore, the sale of 60 Rust Street for $395,000 occurred less than two months before Defendant's bankruptcy filing. It is highly unlikely that Debtor did not know of such a sizeable real estate transaction so close to his bankruptcy filing—especially since he had personally guaranteed the loan to K&G Capital—when he omitted his connection to RC Rush in his SOFA. Moreover, as noted earlier, the deposition testimony of Defendant's father and his associate Maria Zaffarese reveals that Defendant essentially ran RC Rush.

The Defendant also affirmatively stated in the Rule 2004 Examination, which occurred on November 24, 2020, that he had no affiliation with and was not an officer of RC Rush. *See* Ex. 4 Rule 2004 Dep. at 23:2-9. However, in May 2020 (6 months before the Rule 2004 Examination), RC Rush had sold the 326 East Garden City Street property for $449,000. *See* Pls.' SOMF ¶ 75; Ex. 23, Suffolk County Land Records and Deed, Indenture. On November 13, 2020 (11 days before the Rule 2004 Examination), a deed was recorded, evidencing the sale by RC Rush of the 20 Whitman Avenue property for $363,000, in the Suffolk County Clerk's Office (and as mentioned above, Defendant had personally guaranteed the loan related to the purchase, rehabilitation, sale of this property). *See* Pls.' SOMF ¶¶ 71-73; Ex. 22, Suffolk County Land Records and Deed. In the light of these sizeable real estate transactions, the Court finds that Defendant had actual knowledge of his connection to RC Rush when he made false statements during the Rule 2004 Examination. The Court also

finds that the evidence in the record supports the inference that Defendant knowingly and intentionally omitted his connection to RC Rush and misstated his affiliation with RC Rush.

Lastly, Defendant knowingly made false statements during the § 341 Meeting. During this meeting, Defendant affirmatively stated that he had no affiliation with ENL and was never any type of officer of ENL. *See* Ex. 5, § 314 Hr'g Tr. at 50:20, 50:23-25, 51:7-10. However, on August 2009, the Defendant was one of the signatories of a mortgage agreement between ENL and the LaRosas. *See* Ex. 129, Mortgage Agreement. On June 17, 2009, the Defendant, Mr. Vertucci, and Mr. and Mrs. LaRosa signed the document for Chase Bank to open up a corporate bank account for ENL, and the Defendant signed as the "President" of ENL. *See* Pls.' SOMF ¶ 133; Ex. 128, Chase Acct. Signature Page. Thus, the Court may infer Defendant had actual knowledge of his affiliation with ENL because he signed the mortgage agreement on behalf of ENL and signed as an officer of ENL to open up a corporate bank account. *See Ruggieri*, 2025 WL 2775308, at *3.

The Court may also infer that Defendant knowingly made false statements to the chapter 7 trustee about his consent and knowledge of the rental and occupancy of the 20 Frost Valley Road property. The text messages between Defendant and Mr. Rodriguez on February 26, 2020 show that Defendant knew of Mr. Rodriguez's rental and occupancy before March 1, 2020. *See* Rodriguez Aff. ¶ 19; Ex. 11, Text Messages. In addition, on February 11, 2020, Defendant, Rachel Cole, and Mr. Rodriguez executed a lease agreement pertaining to 20 Frost Valley Road. *See* Pls.' SOMF ¶ 144; Rodriguez Aff. ¶ 16, Ex. 8, Lease Agreement. Thus, Defendant had actual knowledge of the rental and occupancy of the premises by Mr. Rodriguez before March 1, 2020, and as result, Defendant knowingly made misstatements to the chapter 7 trustee regarding this matter. *See Ruggieri*, 2025 WL 2775308, at *3; *Davidson*, 2025 WL 2730796, at *4 (finding that debtor knowingly made a false statement when swearing that the income from his business was zero, while at the same time, "prolifically

writing checks and executing transactions from the business account"). Thus, based on the foregoing, the third element of a claim under § 727(a)(4)(A) has been satisfied.

4. Fourth element of a claim under § 727(a)(4)(A): Fraudulent Intent

The Court finds that fraudulent intent has been established by the circumstantial evidence in this case and the inferences drawn from the course of Defendant's conduct. *See Omogun*, 2022 WL 2517160, at *10. In addition, the Court finds that Defendant has exhibited a reckless indifference to the truth because (1) the omissions and misstatements made by Defendant related to interests and transactions that would directly affect the bankruptcy estate and the chapter 7 trustee's ability to investigate and dispose of assets; (2) Defendant was a sophisticated businessman with financial savvy and in-depth knowledge of his matrix of real estate companies; and (3) Defendant has made no attempt to amend his Bankruptcy Filings or correct any of his omissions or misstatements. *See id.*

Defendant's omission of Nest Capital from his Bankruptcy Filings supports an inference of fraudulent intent by reckless indifference to the truth. The omission of Nest Capital directly related to property of the estate under § 541(a)(1) because Defendant had a membership interest in this limited liability company. Section 541(a)(1) of the Bankruptcy Code provides that the bankruptcy estate comprises "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Courts have found that a debtor's membership interest in a limited liability company constitutes property of the estate. *See In re Maidan*, No. 8-19-77027-las, 2023 WL 2190228, at *5 (Bankr. E.D.N.Y. Feb. 23, 2023) (quoting *Garcia v. Garcia* (*In re Garcia)*, 494 B.R. 799, 810 (Bankr. E.D.N.Y. 2013)) ("[W]hen a member of an LLC files a bankruptcy petition, his interest in the LLC, and any rights he has under the LLC's operating agreement, becomes property of the estate."). Furthermore, the transfer on December 11, 2018 by Nest Capital of the 72 West Shore Rd. property, which was within 12 months of Defendant's bankruptcy filing, would affect

property of the estate and be subject to investigation by the chapter 7 trustee. In addition, Defendant was a sophisticated businessman who had direct and in-depth knowledge of his real estate investment portfolio. There is nothing in the record to conclude that Defendant's omission of his membership interest in Nest Capital was due to inadvertence or ignorance. And, it bears repeating that Defendant made no attempt to amend his Bankruptcy Filings to disclose his interest in Nest Capital or disclose the transfer of 72 West Shore Rd. *See Cameo*, 677 B.R. at 172 ("A failure to amend schedules can give rise to an inference of fraud.").

Defendant's omission of his connection to RC Rush from his Bankruptcy Filings and misstatements made during the Rule 2004 Examination also support an inference of fraudulent intent. It is undisputed that Defendant signed a joint agreement stating that he was an officer of RC Rush, *see* Ex. 15, JV Agreement, and that RC Rush had transferred real property within one year of Defendant's bankruptcy filing and also post-petition:

- On or about September 23, 2019, less than two months before Defendant's bankruptcy filing, RC Rush sold the real property located at 60 Rush Street for $395,000. *See* Pls.' SOMF ¶ 68; Ex. 18, Suffolk County Land Records and Deed, Indenture.
- On May 2020, more than six months after Defendant's bankruptcy filing, RC Rush sold the real property located at 326 East Garden City Street for $449,000. *See* Pls.' SOMF ¶ 75; Ex. 23, Suffolk County Land Records and Deed, Indenture.
- On November 13, 2020, a deed was recorded, showing that RC Rush had sold the real property located at 20 Whitman Avenue for $363,000. *See* Pls.' SOMF ¶ 73; Ex. 22, Suffolk County Land Records and Deed.

Not only did Defendant fail to disclose his connection as an officer of RC Rush in his Bankruptcy Filings, but he expressly denied any affiliation with RC Rush or being an officer of RC Rush in the Rule 2004 Examination held on November 24, 2020. Defendant's pattern

of misstatements made during examinations and omissions from his Bankruptcy Filings gives rise to an inference of fraudulent intent. *See Keswani*, 2022 WL 90605, at *11 (finding debtor's false statements and repeated failure to disclose asset information in her schedules and at the § 341 meeting were sufficient to establish fraudulent intent); *Harrington v. Kupersmith (In re Kupersmith)*, 614 B.R. 428, 440 (Bankr. D. Conn. 2020) (citing *Singh*, 585 B.R. at 339) ("The [d]ebtor's pattern of failure to present accurate information, and to remedy inaccurate information, enables the Court to conclude the [d]ebtor made the statements at issue with intent to deceive.").

Defendant's misstatements made during the § 341 Meeting likewise support an inference of fraudulent intent. During the meeting, Defendant denied any affiliation with ENL when asked if he was familiar with this entity. *See* Pls.' SOMF ¶ 132; Ex. 5, § 314 Hr'g Tr. at 50:14-16. However, in 2009, Defendant and Mr. Vertucci signed on behalf of ENL, a mortgage agreement between ENL and the LaRosas, as well as a document to open up a corporate bank account for ENL (where Defendant signed as the "President" of ENL). *See* Ex. 129, Mortgage Agreement; Pls.' SOMF ¶ 133; Ex. 128, Chase Acct. Signature Page. Defendant's failure to disclose his relationship to ENL hindered the chapter 7 trustee's ability to discover and dispose of assets.

Regarding 20 Frost Valley Road and in response to the trustee's questions, Defendant made misstatements about his consent to and knowledge of the rental and occupancy of the property by Mr. Rodriguez before March 1, 2020. *See* Ex. 5, § 314 Hr'g Tr. at 24:12-16, 25:3-9, 25:15-19. Defendant knew he could not dispose of 20 Frost Valley Road, which was property of the estate, without authorization by the chapter 7 trustee. *See* Ex. 5, § 341 Hr'g Tr. at 22:1-10. Further, the estate was not benefitting from any rent proceeds collected from the rental of this property. The text messages on February 26, 2020 between Defendant and Mr. Rodriguez show that Defendant intended to "drag" out the sale of the 20 Frost Valley Road

property in his chapter 7 bankruptcy. *See* Rodriguez Aff. ¶ 19; Ex. 11, Text Messages. Mr. Rodriguez stated that Defendant would then be able to collect the $5,000 in rent proceeds for a longer period of time. *See id.* Defendant answered by saying, "I need to get through the summer after that I should be good to go." *Id.* In the light of these facts, the Court finds that circumstantial evidence supports an inference that Defendant made misstatements to the chapter 7 trustee with fraudulent intent. Furthermore, Defendant's repeated misstatements under oath concerning significant transactions affecting the administration of the estate, his knowledge of such misstatements, and the lack of meaningful corrections by the Defendant demonstrate a reckless disregard for the truth. *See Moreo*, 437 B.R. at 64 (citing *Shah*, 388 B.R. at 38-39) ("[T]he aggregate of misstatements and omissions of fact can demonstrate a pattern of reckless disregard for the truth and intent of concealing information from the Court and its creditors.").

Accordingly, the Court finds that circumstantial evidence, Defendant's course of conduct, and Defendant's reckless disregard for the truth support the inference that the omissions and misstatements of the Defendant were made with fraudulent intent. Thus, the fourth element of a claim under § 727(a)(4)(A) has been satisfied.

5. <u>Fifth element of a claim under § 727(a)(4)(A): Materiality</u>

The Court finds that the omissions and misstatements of the Defendant made in this case were material because they related to the bankruptcy estate, the discovery and disposition of property, the business dealings of Defendant, and information that creditors and the trustee would have regarded as significant in identifying and liquidating assets. *See Omogun*, 2022 WL 2517160, at *10.

The omission of Defendant's interest in Nest Capital was material because it related to property of the estate under § 541(a)(1). *See* 11 U.S.C. § 541(a)(1); *Maidan*, 2023 WL 2190228, at *5. In addition, the omission resulted in concealment of the transfer of a

significant asset, namely the 72 West Shore Rd. property for $769,000, which would have affected the trustee's ability to discover and dispose of assets. Nest Capital was also a real estate company related to Defendant's business of "flipping" real estate properties.

The omission of Defendant's connection as an officer of RC Rush was material because RC Rush, like Nest Capital, was a real estate company related to Defendant's business dealings. In particular, RC Rush was involved in significant real estate transactions within one year of the Defendant's bankruptcy filing as well as post-petition. Debtor's connection to RC Rush and such transactions would have been information that creditors and the trustee would have likely regarded as significant in identifying and liquidating assets. For that reason, Defendant's misstatements made during the Rule 2004 Examination, where Defendant denied any affiliation with RC Rush, were also material.

Lastly, Defendant's misstatements made during the § 341 Meeting as to ENL were material. Defendant denied any affiliation with ENL or being an officer of ENL. *See* Ex. 5, § 314 Hr'g Tr. at 50:20, 50:23-25, 51:7-10. Yet, the record belies the statements made under oath by Defendant. His failure to disclose his relationship to ENL inhibited any investigation by the trustee into any transactions involving ENL and how such transactions impacted the administration of the bankruptcy estate. In addition, Defendant's misstatements concerning his consent and knowledge of the rental and occupancy of 20 Frost Valley Road by Mr. Rodriguez were material because it related to the trustee's ability to dispose of the real property and collect rental proceeds, all of which constituted property of the estate.

Thus, the Court finds that Defendant's omissions and misstatements were material and that the fifth element of a claim under § 727(a)(4)(A) has been satisfied.

6. Defendant Has Failed to Proffer a Credible Explanation or Probative Evidence to Show that a Genuine Issue of Material Fact Exists.

Defendant has not filed a response to Plaintiffs' motion for summary judgment, nor has Defendant provided any credible explanation on the record for his omissions and misstatements. "While judgments as to the credibility of a debtor's explanation generally should not be decided at the summary judgment stage . . . courts in the Second Circuit have granted summary judgment under § 727(a)(4) where facts and circumstances clearly demonstrate a fraudulent intent to make a false oath on the part of the debtor." *Omogun*, 2022 WL 2517160, at *12 (citations omitted); *see also Cameo*, 677 B.R. at 174-75 (reasonably inferring fraudulent intent because defendant "failed to provide a credible explanation for his false statements" and granting plaintiff's motion for summary judgment because "there [were] no disputes respecting material facts"); *Kupersmith*, 614 B.R. at 440 (granting plaintiff's motion for summary judgment where plaintiff properly supported its motion and debtor failed to "affirmatively set forth facts showing that there is a genuine issue for trial"); *Singh*, 585 B.R. at 340 (granting plaintiff's motion for summary judgment denying discharge under § 727(a)(4)(A) where plaintiff "amply established a prima facie case" and debtor failed to provide a credible explanation for his misstatements); *Antoniou*, 515 B.R. at 25 (granting plaintiffs' summary judgment denying discharge where plaintiffs "amply established a *prima facie* case" that debtor "made material misstatements with fraudulent intent" and debtor failed to provide a credible explanation).

Defendant had the opportunity to correct his omissions and misstatements by amending his Bankruptcy Filings or disclosing his omitted interests or connections at the § 341 Meeting or Rule 2004 Examination. He failed to do so. Further, he did not respond to Plaintiffs' motion for summary judgment or provide any credible explanation for his glaring omissions and misstatements.

## V. Conclusion

Based on the foregoing, the Court grants Plaintiffs' motion for summary judgment with respect to the fourth cause action of the Complaint under § 727(a)(4)(A), and Defendant's discharge is denied under § 727(a)(4)(A). Because the Court has concluded that Defendant's discharge is denied under § 727(a)(4)(A), the Court need not, and does not, address whether Defendant's discharge is denied under § 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(5), or (a)(6)(A), or whether Defendant's debts must be excepted from discharge under § 523(a)(2)(A), (a)(4), or (a)(6). The Court will enter a judgment consistent with this Memorandum Decision and Order.

**SO ORDERED.**

**Dated: August 28, 2026**
**Central Islip, New York**

Louis A. Scarcella
United States Bankruptcy Judge